## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:11CR00026-3 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **DAMON DOCK,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia for United States; Damon Dock, Pro Se Defendant.*

The defendant, Damon Dock, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.[1] This matter is before me upon the United States' Motion to Dismiss, and Dock has responded, making the matter ripe for disposition. After reviewing the record, I grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence.

## I.

Dock and five codefendants were charged in a multi-count Superseding Indictment. Count Two charged Dock with conspiracy to possess with the intent to distribute five kilograms or more of cocaine base, in violation of 21 U.S.C. §§ 846

---

[1] The defendant is also known as "Corky."

and 841(b)(1)(A). Count Nine charged Dock with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 2 and 924(c).

Dock pleaded not guilty to all charges, and proceeded to a jury trial which occurred on April 23-26, 2012. The jury found Dock guilty of Count Two and not guilty of Count Nine. On September 24, 2012, I sentenced Dock to 132 months imprisonment.[2] Dock appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed his conviction. *United States v. Dock*, 541 F. App'x 242, 247 (4th Cir. 2013) (unpublished).

The evidence at trial was as follows. From the end of 2010 until May 2011, Dock distributed between 840 grams and 2.8 kilograms of cocaine base ("crack cocaine"). As payment, codefendant Chris Berry gave Dock stolen property that Dock's girlfriend, codefendant Hope Leonard, then sold. On multiple occasions during this timeframe, Dock traveled with his son, codefendant Damon Dock, Jr. ("Junior"), and Leonard to meet Dock's drug supplier, Chris Avery, in Johnson City, Tennessee. They would then transport the crack cocaine to Dock's residences in Bristol, Tennessee, and Bristol, Virginia.

At trial, Berry testified that he and his girlfriend, codefendant Amy Moser, obtained various amount of crack cocaine from Dock "almost on a daily basis"

---

[2] The Presentence Investigation Report ("PSR") recommended a total offense level of 34 and a criminal history category of V, resulting in a guideline sentence range of 235 to 293 months' imprisonment. (PSR 12, ECF No. 334.)

2

during the end of 2010. (Trial Tr. 15-16, ECF No. 235.) Further, Berry saw Avery deliver crack cocaine to Dock on multiple occasions. (*Id*. at 23-26.) Berry testified that Junior also transported crack cocaine he obtained from Avery to Dock's residences in Bristol, Tennessee, and Bristol, Virginia.

On May 19, 2011, Dock and his codefendants Berry, Moser, Leonard, and Junior checked into a hotel in Bristol, Tennessee, and spent the day smoking crack cocaine. However, the United States Marshals Service had been conducting surveillance on the hotel room and had an arrest warrant for Berry. The officers identified Berry, entered the room, and arrested Dock, Berry, Moser, and Junior.[3] The officers found in the room digital scales, drug paraphernalia, a Beretta handgun, prescription medication, and 5.7 grams of crack cocaine.

In his § 2255 motion, Dock alleges that counsel provided ineffective assistance during trial, sentencing, and appeal.[4] Dock also claims that his sentence was improper in light of the Supreme Court decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

---

[3] Dock had sent Leonard to deliver crack cocaine to one of his customers, and thus, she was not present when the Marshals entered the room.

[4] At trial, Dock was represented by David Saliba ("trial counsel"). Following the trial, on August 10, 2012, Dock's motion for substitution of counsel was granted and Daniel Bieger ("sentencing counsel") was appointed to represent Dock at sentencing. (Aug. 10, 2012 Hr'g Tr. at 8, ECF No. 466; ECF No. 295.) Michael Hemenway ("appellate counsel") represented Dock on appeal.

II.

To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).[5]  The first prong of *Strickland* requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell below an objective standard of reasonableness.  *Id*. at 687-88. Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance.  *Id*. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

The second prong of *Strickland* requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

---

[5] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong.  *Id.* at 697.

4

III.

A. Allegations of Ineffective Assistance
of Trial and Sentencing Counsel.

(1) Venue and Jurisdiction (Claim 2).[6]

Dock alleges that trial counsel provided ineffective assistance by failing to contest venue and jurisdiction. In support, Dock argues that Virginia lacked jurisdiction because, "only the state of Tennessee had any factual involvement and factual nexus to the subject drug activity." (Mot. to Vacate 12, ECF No. 412.) He further argues that the "traffic stop . . . that later led to the seizure of narcotics in a nearby Tennessee hotel, was entirely pretextual . . . ." (*Id.*) Dock's arguments lack merit.

Generally, and "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. However, it is well established that a "'conspiracy may be prosecuted in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed.'" *United States v. Izegwire*, 371 F. App'x 369, 372 (4th Cir. 2010) (unpublished) (quoting *United*

_____

[6] In Claim 1, Dock makes only general, conclusory allegations regarding the ineffective assistance of counsel claims asserted in his § 2255 motion. Dock must do more than make conclusory assertions regarding the effectiveness of counsel to prevail on a § 2255 motion. *See United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) ("[A]iry generalities, conclusory assertions and hearsay statements [do] not suffice' to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing . . . .") (internal quotation marks and citations omitted). Accordingly, this claim will be dismissed.

*States v. Gilliam*, 975 F.2d 1050, 1057 (4th Cir. 1992)); *see also* 18 U.S.C. § 3237(a) ("[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.").

At trial, codefendant Welch testified that she and codefendant Avery used her home, located in Bristol, Virginia, as a base of operations for distributing crack cocaine. (Trial Tr. 86-87, ECF No. 349.); *United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006) ("In a conspiracy case . . . 'proof of acts by one co-conspirator can be attributed to all members of the conspiracy.'") (quoting *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995)). Additionally, there was evidence at trial that Dock received deliveries of cocaine base at his residence in Bristol, Virginia. (Trial Tr. 91, ECF No. 349.) Accordingly, Dock has not shown that counsel was ineffective for failing to file a motion objecting to venue or jurisdiction in the Western District of Virginia. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (The Sixth Amendment does not require counsel to raise a meritless argument.) Thus, I will dismiss this claim.

(2) Pretrial Investigation (Claim 3).

Dock asserts that trial counsel provided ineffective assistance by failing to conduct proper pretrial investigation and by failing to hire a private investigator. Primarily, Dock complains that trial counsel failed to establish that Dock did not live exclusively with codefendant Leonard from January 2010 through May 2011, as the government claimed. Instead, Dock asserts that he lived with Leonard only from April 26, 2011, to May 20, 2011. (Mot. to Vacate 17-18, ECF No. 412.) Dock asserts that a private investigator would have been able to establish that fact, which would have resulted in a lesser drug quantity being attributed to Dock.[7]

---

[7] In Claim 3, Dock lists additional evidence he asserts counsel should have obtained and that the private investigator would have gathered, including: (1) electric bills (showing that the trailer the government argued Dock used to conduct drug transactions was not inhabited); (2) state prison records (establishing an alibi defense that Dock was incarcerated in the Haysi Regional Jail and Abingdon Regional Jail during a period of time that the government contended he was involved in the conspiracy); (3) a videotape from a federal holding cell (where codefendant Welch allegedly stated she "did not know" Dock); (4) Dock's state court preliminary hearing transcript (showing drug quantities in the "four-gram range"); and (5) Avery's exculpatory statements to the government. (Mot. to Vacate 14-19, ECF No. 412.) Dock also asserts a private investigator would have interviewed witnesses to establish Dock's "very serious drug addiction." (*Id.* at 15.)

However, Dock fails to show that any of this purported evidence would have changed the outcome of his trial. Even without electricity, the trailer could have been used to sell drugs. Also, counsel did introduce records related to his incarceration at the Haysi Regional Jail and Abingdon Regional Jail during the jury trial. (Ex. & Witness List, ECF No. 228-2, -3.) Further, Dock failed to provide evidence that the videotape exists or that Welch made such statements, and his claims regarding the Tennessee state court proceeding are vague and conclusory. Also, counsel obtained exculpatory information provided by Avery during an interview with the government on April 23, 2012. (Mot. to Dismiss Ex. 1, ECF No. 450-1.) Finally, both trial counsel and

7

Dock further asserts that counsel should have called Ericka Austin, Mark Taylor, and Mona Taylor as defense witnesses. Dock claims that counsel "assured Dock that he would [subpoena them], but failed to, without explanation." (*Id.* at 14.) Dock proffers that each witness would have testified that Dock did not reside with Leonard for periods of time during the conspiracy. However, Dock fails to proffer any specific timeframes. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation").

Further, "the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks," and a habeas court must give great deference to such decisions. *Id*, at 317 (internal quotation marks and citation omitted) (rejecting claim that counsel was ineffective in failing to call three jail house witnesses who might have provided exculpatory evidence); *see Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977) (noting counsel's failure to call witnesses is a tactical decision which courts are reluctant to second guess).

---

sentencing counsel, as well as the PSR, informed the court that Dock had a serious drug addiction.

Moreover, Dock fails to establish prejudice because sentencing counsel did take steps to establish precisely when Dock lived with Leonard prior to sentencing. Sentencing counsel argued in the Supplemental Sentencing Memorandum that the drug weight attributed to Dock was incorrect because Dock lived with Leonard for "only approximately 7 weeks during the conspiracy, being the time between April 19, 2011 (when he was released from the Haysi Regional Jail) and June 7, 2011 (when he was arrested for conspiracy)." (Sentencing Mem. 1-2, ECF No. 319.) In support, sentencing counsel referenced Dock's records of incarceration, as well as the time he resided with Ericka Austin, from June 30, 2010, until April 4, 2011. Indeed, Austin testified at the sentencing hearing that Dock lived with Austin's relatives from June 30, 2010, until August 2010, and then Dock lived with Austin from August 2010 until March or April 2011. (Sentencing Hr'g Tr. at 15-17, ECF No. 359.) Accordingly, Dock has failed to show that counsel provided ineffective assistance under *Strickland* and I will dismiss these claims. [8]

### (3) Drug Weight (Claim 4).

Dock claims that trial counsel provided ineffective assistance by failing to object to the drug weight calculations in his PSR. However, Dock fails to show

---

[8] Dock asserts the same arguments in Claim 8 regarding counsel's failure to establish that Dock did not live with Leonard from January 2010 until May 2011, as the government contended. Dock claims counsel should have subpoenaed Ericka Austin, Mark Taylor, and Mona Taylor as well as Dock's incarceration records, electric and cable bills, monitoring records from his ankle bracelet while on house arrest, attendance records at drug class and community service, and telephone records. However, Claim 8 fails for the same reasons as Claim 3 and will be dismissed.

any prejudice because sentencing counsel objected to the drug weight in his Supplemental Sentencing Memorandum (ECF No. 319), and at the sentencing hearing. (Sentencing Hr'g Tr. 52-53, ECF No. 359.); *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002) ("defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation."). Sentencing counsel cross-examined the government's witnesses and capably argued to the court on this issue.[9] Sentencing counsel argued as follows:

> The pre-sentence report . . . attributes the 840 grams to 2.8 kilograms to Damon Dock based on their assumption he was living with Hope Leonard during the conspiracy, and based on statements from Chris Berry.
>
> I think we've proved with the evidence today that he was living with Hope Leonard for only seven weeks of the conspiracy, namely from approximately April of 2011 to June 7, 2011 . . . .
>
> . . . [T]he assumption that [Dock] should be attributed with all those drugs based on that they were living together is false.

(Sentencing Hr'g Tr. 52, ECF No. 359). Accordingly, Dock has failed to show any prejudice from trial counsel's failure to object to drug weight.[10]

---

[9] On August 24, 2015, Dock filed a Motion for Leave to File a Supplemental Exhibit to his § 2255 Motion, specifically the transcript from the sentencing hearing on August 10, 2012, where new counsel was appointed and the sentencing was continued. This motion will be granted; however, the court also notes that the transcript was previously made part of the record on May 26, 2015, pursuant to an Order entered on May 21, 2015.

[10] Moreover, this claim has already been reviewed and denied by the court of appeals. Issues raised and decided on direct appeal may not be recast "under the guise of a collateral attack." *Stitt v. United States*, 369 F. Supp. 2d 679, 685 (E.D. Va. 2005)

(4) Indictment (Claim 5).

Dock claims that trial counsel was ineffective for failing to challenge the indictment on the basis that it was obtained using the, "perjured testimony of Brandon Wyatt and Maggie Welch." (Mot. to Vacate 7, ECF No. 412.) In support of his claim, Dock states that "Wyatt proffered to the government that Dock possessed narcotics and firearms though Wyatt subsequently signed a sworn statement indicating that he never saw Dock in possession of the same." (*Id.* at 21.) However, Dock presents no evidence in support of his claim that Wyatt testified before the grand jury, and the government indicates that it "has no record that Wyatt provided any testimony to the grand jury that returned the superseding indictment against [Dock]."[11] (Mot. to Dismiss 11, ECF No. 450.) Additionally, while Welch did testify before the grand jury, that same grand jury charged her with perjury based on that testimony. (Superseding Indictment 1, ECF No. 34.) Thus, Dock has failed to show that a challenge to the indictment based on perjured testimony would have been successful. *See Strickland*, 466 U.S. at 687-91; *see*

---

(citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)). The court of appeals rejected Dock's argument that the "evidence presented at trial supports a drug weight calculation of no more than 280 grams, . . . [and] the district court erred when it attributed" between 840 grams and 2.8 kilograms to Dock. *Dock*, 541 F. App'x at 246. The court of appeals concluded that the, "evidence in this case provides ample support for the district court's drug weight calculation." *Id.*

[11] Moreover, it is not clear when Wyatt signed the statement that he had "not seen Damon Dock with any drugs or guns" as the statement is not dated. (Mot. to Dismiss Ex. A2, ECF No. 412-1.) Further, Dock does not claim that he ever showed the statement to counsel.

*also Knowles v. Mirzayance*, 556 U.S. 111, 123-28 (2009) (noting counsel's failure to make a baseless objection is not ineffective assistance of counsel).

Moreover, the United States Supreme Court has held that some irregularities in a grand jury proceeding do not constitute prejudice where the defendant is ultimately convicted. *See United States v. Mechanik*, 475 U.S. 66, 70-72 (1986). In *Mechanik*, the court held that a violation of Federal Rule of Criminal Procedure Rule 6(d) did not warrant reversal of the defendants' convictions because "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *Id.* at 70. Accordingly, Dock has not shown that counsel was ineffective and this claim will be dismissed.

(5) Failure to Move for a Post-trial Judgment of Acquittal (Claim 6).

Dock argues that both trial counsel and sentencing counsel were ineffective for not moving for a judgment of acquittal based on the government's failure to establish a conspiracy to distribute narcotics. Contrary to Dock's claim, trial counsel did file a Motion for Judgment of Acquittal based on these grounds. (ECF No. 262.) While I noted that the motion was untimely, I also found that "there was sufficient evidence presented before the jury to support its verdict." (Order, ECF No. 263.) Because trial counsel filed a Motion for Judgment of Acquittal that was

12

denied, Dock has failed to show that any such motion filed on the same grounds by sentencing counsel would have been successful.  *See Strickland*, 466 U.S. at 687-91; *Sharpe*, 593 F.3d at 383.

Moreover, this claim has already been reviewed and denied by the court of appeals.  Issues raised and decided on direct appeal may not be recast "under the guise of a collateral attack."  *Stitt v. United States*, 369 F. Supp. 2d  679, 685 (*citing Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)).  The court of appeals rejected Dock's argument that the government failed to prove the existence of a conspiracy to distribute crack cocaine.  *Dock*, 541 F. App'x at 246. Accordingly, Dock fails to show ineffective assistance under *Strickland,* and this claim will be dismissed.[12]

(6) Cross-Examination of Government Witnesses (Claim 7).

Dock alleges that trial counsel's cross-examination of government witnesses Berry, Moser, and Welch, was deficient.  Specifically, Dock complains that the government's contention that Dock supplied Berry with "two kilograms of cocaine in exchange for stolen property with a total value of $14,900.82" makes little

---

[12] In Claim 20, Dock argues that trial and sentencing counsel provided ineffective assistance by failing to move for a new trial.  However, the various grounds for a new trial proffered by Dock either completely lack merit or are addressed elsewhere in this opinion, such as an alleged failure to prove a conspiracy, and counsel's alleged failure to secure certain evidence, like electric bills from Dock's trailer.  Furthermore, Dock has failed to show that a Motion for a New Trial would have been successful.  *See Sharpe*, 593 F.3d at 383 (noting that the Sixth Amendment does not require counsel to raise a meritless argument.)  Accordingly, this claim is denied.

sense, because two kilograms of cocaine has a street value far in excess of $14,900.82. (Mot. to Vacate 23-24, ECF No. 412.) However, Dock fails to show prejudice because sentencing counsel argued that Berry's breaking and entering convictions did not provide a sufficient value of stolen property to purchase two kilograms of crack cocaine from Dock.[13]

Dock further complains that counsel failed to elicit testimony from Moser that the drug amount attributed to Dock was a "mathematical impossibility." (*Id.* at 24.) However, Dock does not coherently explain why the drug amount was a "mathematical impossibility" or how counsel should have established that fact. Regarding Welch, Dock claims "upon information and belief" that the government dropped her perjury charge in exchange for testimony and that counsel did not effectively cross-examine her on this issue. (*Id.* at 25.) However, contrary to Dock's claim, trial counsel did cross-examine Welch regarding her perjury charge. Counsel asked Welch, "Did you tell the truth [before the grand jury] that day?" and Welch responded, "No, I did not." (Trial Tr. 3, ECF No. 350.) Counsel also questioned Welch about how she had failed to mention Dock in a prior statement to the government and stated, "[Y]ou expect your cooperation today before this jury to help you out down the road . . . correct?" (*Id*. at 5.)

---

[13] Dock also testified in this regard during sentencing.

Dock has failed to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A review of the record shows that counsel provided sufficient cross-examination of the government's witnesses. In particular, counsel questioned Berry extensively regarding the amounts of crack cocaine he claimed he obtained from Dock. Moreover, courts should not engage in analyses that would "constitute a grading of the quality of counsel's cross-examination." *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995) (internal quotation marks and citation omitted); *see also Yarbrough v. Johnson*, 490 F. Supp. 2d 694, 738-39 (E.D. Va. 2007) ("A hindsight review of any cross-examination will unquestionably reveal an opportunity to ask one more question or highlight one more point; however, in the midst of a trial with an adverse witness on the stand, a lawyer must always make split-second decisions as to how to best shape his questioning in order to extract the most desirable responses."). Accordingly, Dock has failed to show that counsel provided ineffective assistance, and this claim will be dismissed.[14]

---

[14] In Claim 13, Dock also asserts ineffective assistance related to cross-examination. Dock argues that counsel failed to establish that certain government witnesses committed perjury, and he provides a list of purported conflicting testimony. (Mot. to Vacate 33-36, ECF No. 412.) This testimony includes conflicts in the quantity of drugs sold by Dock, confusion between Dock and his son, and confusion regarding whether Berry had used stolen items or money to obtain drugs from Dock. However, the mere existence of some potential conflicts in witness testimony during trial does not establish that counsel provided ineffective assistance. Further, Dock has not established prejudice. Accordingly, Claim 13 will be dismissed.

(7)  Pretrial Suppression Motions (Claim 9).

Dock claims that counsel provided ineffective assistance by failing to file pretrial suppression motions to prevent the trial testimony of Berry, Moser, and Welch.  As support, Dock asserts that their testimony was "more prejudicial than probative" and "testimony of a non-co-conspirator constitutes inadmissible hearsay testimony . . . ."  (Mot. to Vacate 29, ECF No. 412.)  However, Dock fails to offer any valid grounds for suppressing these witnesses' testimony and thus fails to show that a motion to suppress would have been successful.  *See Sharpe*, 593 F.3d at 383.  Accordingly, Dock fails to show ineffective assistance under *Strickland*, and this claim will be dismissed.

(8)  Evidence of Dock's Drug Addiction (Claim 10).

Dock argues that trial and sentencing counsel were ineffective for failing to present evidence of his drug use and addiction, which would have "necessarily [led] to a far lesser drug quantity calculation for sentencing purposes."  (Mot. to Vacate 8, ECF No. 412.)  Contrary to Dock's assertion, both trial and sentencing counsel did bring Dock's drug addiction to the court's attention.[15]  Trial counsel argued in his Sentencing Memorandum that Dock "has suffered from severe substance abuse addiction from his preschool years forward . . . ."  (Sentencing

---

[15]  Additionally, the PSR detailed Dock's drug addiction, stating that Dock first experimented with illegal drugs and alcohol at a very early age and that "a typical day prior to his arrest would include using approximately three grams of cocaine, ten Lortabs, 10 Xanax, and marijuana."  (PSR 11, ECF No. 334.)

Mem. 1, ECF No. 279.)   Further, Dock testified regarding his addiction at the sentencing hearing.  Sentencing counsel asked, "Were you basically a serious drug addict when you got arrested on a probation violation?"  (Sentencing Hr'g Tr. 40, ECF No. 359.)  Dock responded, "Yes, sir."  (*Id.*)  Accordingly, Dock has not shown ineffective assistance of counsel, and this claim will be dismissed.

(9)  Jury Instructions (Claim 11).

Dock argues that counsel was ineffective for failing to "insist upon" jury instructions regarding personal use and multiple conspiracies.  (Mot. to Vacate 8, ECF No. 412.)   However, Jury Instruction Number 12 addressed personal use, providing, in part, as follows:

> The mere purchase or receipt of illegal drugs by a user of the drugs, without resale or distribution, but solely for personal use, does not by itself alone make the purchaser a conspirator.

(Final Jury Instrs. 16,  ECF No. 229.)  Moreover, to the extent that Dock claims he is entitled to an instruction for a lesser-included offense of simple possession, this claim lacks merit.  "To be entitled to the instruction [for a lesser-included offense of simple possession of cocaine], the defendant must present some 'evidence from which a reasonable jury could find that [defendant's] intent was to possess the cocaine for personal use, rather than for distribution.'"  *United States v. McKoy*, 498 F. App'x 369, 371 (4th Cir. 2012) (unpublished) (second alteration in original)

(quoting *United States v. Wright*, 131 F.3d 1111, 1112 (4th Cir. 1997)). Dock has presented no such evidence.[16]

In support of his argument for a multiple conspiracy jury instruction, Dock states that the testimony of "Moser and Berry established the existence of multiple conspiracies in that they stated that Dock sent them to secure narcotics from another person named Chris and a second person named Chris . . . ." (Mot. to Vacate 31, ECF No. 412.) Contrary to Dock's claim, this testimony does not establish the existence of multiple conspiracies.

The United States Court of Appeals for the Fourth Circuit has held that, "[a] multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved only in 'separate conspiracies *unrelated* to the overall conspiracy charged in the indictment.'" *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) (quoting *United States v. Castaneda-Cantu*, 20 F.3d 1325, 1333 (5th Cir. 1994)). In contrast, "A single conspiracy exists when there is an agreement to engage in one overall venture to deal in drugs." *United States v. Bowens*, 224 F.3d 302, 307 (4th Cir. 2000) (citing *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988)). Dock's argument for multiple conspiracies fails because the evidence at trial supports that there was an

---

[16] Indeed, Berry testified at trial that he traded stolen property to Dock, along with others, in exchange for crack cocaine. Berry also testified that, during the end of 2010, he was receiving crack cocaine from Dock "[a]lmost on a daily basis." (Trial Tr. 15, ECF No. 235.)

agreement to engage in the "overall venture to deal in drugs" in the Western District of Virginia. *Id.* Because a multiple conspiracy instruction was not required in this case, Dock has not shown that counsel was deficient for failing to request one. See *Hall v. United States*, 30 F. Supp. 2d 883, 893 (E.D. Va. 1998) (noting counsel's failure to request jury instructions on multiple conspiracies was not deficient when proof at trial did not establish separate unrelated conspiracies). Accordingly, this claim will be dismissed.

(10) Mistrial (Claim 12).

Dock asserts counsel provided ineffective assistance by failing to move for a mistrial upon discovering that government witnesses Berry and Moser were regularly communicating during trial. Dock provides no support for his allegations, asserting instead that Berry's telephone records from the Abingdon Regional Jail would establish Berry's calls with "Moser and others." (Mot. to Vacate 32, ECF No. 412; Reply in Supp. 11, ECF No. 454.) Such conclusory assertions made without any evidentiary support are not sufficient to warrant relief or even an evidentiary hearing. *See, e.g., United States v. Dyess*, 730 F.3d 354, 359-60 (4th Cir. 2013). Moreover, Dock does not explain how he suffered any prejudice from the alleged communications. Accordingly, this claim will be dismissed.

19

(11) Polling the Jury (Claim 14).

Dock asserts that counsel provided ineffective assistance by failing to poll the jury. In his Reply to the government's Motion to Dismiss, Dock asserts that his trial counsel should have polled the jury "on the specific question of their collective decision to acquit Dock of the firearm charge while convicting him on the narcotics conspiracy charge." (*Id.* at 12.) Dock asserts this "information" would have "assisted appellate counsel on appeal" and led to a reversal by the court of appeals. (*Id.*) Contrary to Dock's assertion, the jury was polled, and the record shows that the verdict was unanimous. (Mins. from Day 4 of Trial 2, ECF No. 223.) To the extent that Dock asserts counsel should have asked the individual jurors to explain their decision during the polling process, this would not have been proper. Fed. R. Evid. 606(b)(1).[17] Moreover, Dock fails to explain how such information would have helped him on appeal. Accordingly, Dock has failed to show that counsel provided ineffective assistance, and this claim will be dismissed.

---

[17] Federal Rules of Evidence 606(b)(1) provides:

During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

20

(12)  Jury Selection (Claim 19).

Dock argues that trial counsel provided ineffective assistance by failing to object to "an all-[C]aucasian jury" and by failing to strike a juror whose family member had overdosed on narcotics.  (Mot. to Vacate 9, 44, ECF No. 412.) However, Dock provides no specific support for these allegations and simply concludes that "Virginia's system of selecting veniremen is manipulable and was otherwise racially biased."  (Mem. in Supp. of Mot. to Vacate 51, ECF No. 422.) Conclusory allegations of ineffective assistance of counsel, without factual support, are insufficient to raise a constitutional issue or require an evidentiary hearing.  *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992).  Accordingly, Dock has failed show ineffective assistance of counsel regarding the jury selection process and this claim will be dismissed.

(13)  Confusion Between Dock and his Son, Junior (Claim 21).

Dock claims counsel provided ineffective assistance by failing to "identify and appreciate the significance of the court's and the jury's confusion as to the identity of Damon Dock, Sr. and Damon Dock, Jr. during the entirety of the instant case . . . and their respective roles in the drug conspiracy."  (Memo. in Supp. of Mot. to Vacate  8, ECF No. 422.).  While Dock points to several places in the record as examples of Dock being confused with his son, he does not demonstrate that either the court or the jury was confused as to his identity or role in the

conspiracy. Moreover, Dock provides no evidence regarding how this alleged confusion prejudiced him and changed the outcome of his case. Accordingly, the claim will be dismissed.

(14) Sentencing Counsel's Alleged Conflict of Interest (Claim 15).

Dock claims that sentencing counsel provided ineffective assistance by failing to withdraw based on his "longstanding, personal relationship with trial [counsel]." (Mot. to Vacate 39, ECF No. 412.) To establish that a conflict of interest resulted in ineffective assistance, Dock must show that counsel operated under a conflict of interest and that the conflict "adversely affected" counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). To demonstrate an "adverse affect," Dock must identify a plausible, alternative defense strategy or tactic that counsel might have pursued that was objectively reasonable under the facts known to counsel at that time and must also establish that counsel's "failure to pursue that strategy or tactic was linked to the actual conflict." *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001).

Dock asserts that sentencing counsel should have argued that trial counsel's ineffective assistance was a factor in favor of a below-guideline sentence. During the sentencing hearing, sentencing counsel stated, "I told [Dock] that if it comes time to complain about the prior representation of [trial counsel] I would not feel comfortable in doing that. I would feel like I have a conflict of interest because

22

I'm friendly with [trial counsel] . . . ." (Sentencing Hr'g Tr. 10, ECF No. 359.) However, I responded that trial counsel's performance "is not an issue in this case at this time . . . . The question here is the appropriate sentence to be imposed on Mr. Dock, and so what [trial counsel] did or didn't do is not an issue."[18] (*Id.*) Thus, Dock fails to establish either an actual conflict or a forfeited meritorious defense. Accordingly, this claim will be dismissed.

### B. Allegations of Inefffective Assistance of Appellate Counsel.

#### (1) Failure to Appeal the Court's Denial of Dock's Motion to Continue the Sentencing and Compel Chris Berry to Testify (Claim 16).

Dock argues that appellate counsel provided ineffective assistance for failing to argue on appeal that the district court erred by denying his motion to call Berry as a witness during the sentencing hearing. In response to sentencing counsel's Motion for a Continuance, I stated, "There's really no representation before the court as to what Mr. Berry . . . would say that would be relevant . . . ." (Sentencing Hr'g Tr. 8, ECF No. 359.) And further, Berry did "testify at trial, was subject to cross examination, and further testimony . . . would be, in my view, be speculative at best." (*Id.*)

---

[18] I also stated that trial counsel had been relieved because of a communication problem and further indicated, "I don't know of anything wrong that [trial counsel] did in connection with the case at all, and that was not the reason that I relieved [trial counsel]; it was because Mr. Dock requested it, and after my examination of both Mr. Dock and [trial counsel], I became convinced that they had a communication problem, as Mr. Dock so represented." (Sentencing Hr'g Tr. 9, ECF No. 359.)

This claim fails because appellate counsel is not required to present every claim, or even every non-frivolous claim, that a client wishes to assert. *See Jones v. Barnes*, 463 U.S. 745, 752-53 (1983) (noting appellate counsel must "examine the record with a view to selecting the most promising issues for review.") Courts should ordinarily "find ineffective assistance for failure to pursue claims on appeal" only when "'ignored issues are clearly stronger than those presented.'" *United States v. Mason*, 774 F.3d 824, 829 (4th Cir. 2014) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Dock has not shown that his proffered argument was clearly stronger than the arguments counsel presented, involving sufficiency of the evidence and the proper calculation of the sentencing guidelines. Accordingly, Dock has not shown ineffective assistance of counsel under *Strickland*, and this claim will be dismissed.[19]

(2)  Withdrawal of Appellate Counsel (Claim 17).

Dock asserts that appellate counsel provided ineffective assistance by withdrawing after the court of appeals affirmed the district court's rulings, based on counsel's assessment that further action would be frivolous, rather than filing a petition for rehearing or a writ of certiorari. Generally, a defendant has no

---

[19]  Dock's arguments that appellate counsel provided ineffective assistance for failing to "to contest, on *en banc* review, the fact that witness Avery did not testify at trial" and that the court "erroneously relied upon Avery's non-existent trial testimony to affirm the district court's drug weight calculation" fail for the same reasons. (Mot. to Vacate 9, 40-41, ECF No. 412.)

24

constitutional right to the assistance of counsel to pursue a petition for a writ of certiorari in the Supreme Court. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982). However, where court rules define the duties of an appellate attorney regarding seeking certiorari, counsel's failure to comply with such rules can provide a basis for a claim under *Strickland* that counsel was ineffectve. *See United States v. King*, 11 F. App'x 219, 220-21 (4th Cir. 2001) (unpublished); *see also* Plan of the United States Court of Appeals for the Fourth Circuit in Implementation of the Criminal Justice Act, pt. V, ¶ 2 ("CJA Plan") (Oct. 1, 2015).

The CJA Plan requires appellate counsel to inform a defendant of his right to petition the Supreme Court, and to file a petition for writ of certiorari for the defendant, "[i]f the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review . . . ." CJA Plan pt. V, ¶2. However, if "counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw with this court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of certiorari." *Id.* By letter dated August 29, 2013, appellate counsel notified Dock that the court of appeals had denied his appeal and stating, "If you wish me to file a petition for rehearing or a petition for certiorari, please let me know immediately, and I will do so." (Mot. to Vacate Ex. H 37, ECF No. 412-1.) On September 11, 2013, appellate counsel received a letter from Dock asking for further appeal. (*Id.* at 38.)

By letter dated November 19, 2013, appellate counsel notified Dock that his request for a rehearing was untimely, and thus, counsel did not file a petition for rehearing. (*Id.*) The letter further stated that a certiorari petition would be frivolous, appellate counsel had filed a motion to withdraw, and that Dock had seven days to respond to the withdrawal motion.

The evidence indicates that appellate counsel complied with his obligations under the CJA Plan with regard to filing a certiorari petition. Therefore, Dock fails to demonstrate any way that appellate counsel's representation was deficient. Moreover, Dock fails to demonstrate any reasonable probability that the outcome of his case would have been different if appellate counsel had filed a certiorari petition. Dock clearly disagreed with the ruling of the court of appeals; however, he fails to show that appellate counsel provided ineffective assistance and this claim will be dismissed.

C. *Alleyne* (Claim 18).

Dock also asserts that his sentencing violated the Supreme Court's decision in *Alleyne,* 133 S. Ct. 2151. In *Alleyne*, the Supreme Court held that any fact increasing the mandatory minimum penalty for an offense must be alleged in the indictment and proven beyond a reasonable doubt to a jury. *Id.* at 2156. However, that holding has not been made retroactively applicable to cases on collateral

review.[20]  *See, e.g., United States v. Stewart*, 540 F. App'x 171, 172 n.* (4th Cir. 2013) (unpublished) (noting that "Alleyne has not been made retroactively applicable to cases on collateral review"); *Oscar v. United States*, No. 2:93cr131, 2015 WL 104727, at *2 (E.D. Va. Jan. 6, 2015); *Williams v. United States*, No. 4:09cr00039, 2014 WL 526692, at *4 (W.D. Va. Feb. 7, 2014).  Accordingly, this claim will be dismissed.[21]

## IV.

For the foregoing reasons, I will grant the United States' Motion to Dismiss and dismiss the Motion  to Vacate, Set Aside, or Correct Sentence.  A separate Final Order will be entered herewith.

DATED:  November 23, 2015

/s/  James P. Jones
United States District Judge

---

[20] I sentenced Dock to 132 months' imprisonment on September 24, 2012, and *Alleyne* was decided on June 17, 2013.

[21] Dock also argues that the jury's verdict did not contain "a specific finding of guilt based upon a specific drug quantity attributable to Dock's conduct . . . ." (Mot. to Vacate 43, ECF No. 412.)  However, the only element that increased Dock's mandatory minimum sentence was the drug weight of 280 grams or more of cocaine base, pursuant to 21 U.S.C. § 841(b)(1)(A), which was found by the jury in a special verdict form. (Verdict Form at 1, ECF No. 230).

27